UNITED STATE BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: <br><br> 3RC Mechanical & Contracting Services, LLC, <br><br> Debtor | |
| N. Neville Reid, as Chapter 7 Trustee for 3RC Mechanical & Contracting Services, LLC, <br><br> Plaintiff <br><br> v. <br><br> Climatemp, Inc. <br><br> Defendant | Bankruptcy No. 10-bk-34781 <br><br> Chapter 7 <br><br> Adversary No. 10-ap-2680 |

## MEMORANDUM OPINION ON TRUSTEE'S MOTION TO STRIKE

3RC Mechanical & Contracting Services ("3RC") filed a petition for relief under chapter 7 of the Bankruptcy Code on August 3, 2010. N. Neville Reid, the Chapter 7 Trustee, ("the Trustee") filed this adversary proceeding against Climatemp, Inc. ("Climatemp") seeking damages for breach of contract and unjust enrichment based on work purportedly performed under two subcontracts. Climatemp filed an answer and affirmative defenses. Climatemp also filed a motion for summary judgment, attaching several affidavits, including one by Fred Adamitus ("Adamitus Affidavit"), which included thirty-five exhibits. The Trustee has moved to to strike portions of exhibits to the Amended Affidavit of Fred Adamitus ("Motion to Strike") contending that sixteen of those exhibits constitute inadmissible hearsay which cannot be considered in support of the motion for summary judgment. The motion for summary judgment is still pending, awaiting final briefing. For reasons stated below, Trustee's Motion to Strike is denied.

### Background

The following background facts are according to the Adamitus Affidavit, which at this point has not been challenged as to its asserted facts. The Trustee did not submit any evidence or dispute any facts for purposes of his motion. Thus, for purposes of deciding this motion, the following facts can be treated as undisputed.

Climatemp was a subcontractor to F.H. Paschen, S.N. Nielsen & Assoc, LLC ("FHP"), the general contractor, for a project named the Kelly Curie Gage Park High School

("the Project"). Fred Adamitus was the project manager for the Project. In October, 2008, 3RC and Climatemp entered into a sub-sub-contract where 3RC was to provide heating and cooling equipment and services. In March, 2010, 3RC experienced trouble performing its obligations under the contract, which resulted in FHP hiring T.V.S. Mechanical Inc. ("TVS") to complete 3RC obligations. FHP charged the cost of hiring TVS against Climatemp's contract price. On June 22, 3RC stopped work entirely, and informed Climatemp that it was going out of business. Climatemp hired Quality Control Systems ("QCS") and several other subcontractors to finish 3RC's work.

Then came 3RC's bankruptcy, this adversary, Climatemp's motion for summary judgment, and Trustee's Motion to Strike. Other undisputed facts appear in the Discussion below.

## Discussion

### Jurisdiction

Jurisdiction lies over this motion under 28 U.S.C. § 1334. It is referred here by Internal Procedure 15(a) of the District Court for the Northern District of Illinois. This matter is a trustee's adversary complaint seeking damages for breach of contract under state law, and is therefore not a core proceeding, but is related to a case under title 11. "A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11." 28 U.S.C. § 157(c)(1). § 157(c)(1) further provides that the "any final order or judgment shall be entered by the district judge," implying that interim orders may be entered by a bankruptcy judge under authority to "hear" the proceeding. Both parties have consented to entry of final judgment by a bankruptcy judge under 28 U.S.C. § 157(c)(2).

### Rule 803(6) Business Records

The Trustee contends that invoices from third parties in sixteen of the thirty-five exhibits attached to the Affidavit of Fred Adamitus are inadmissible hearsay even though they were received and retained in the business records of Climatemp because they are hearsay within hearsay. Further, the Trustee argues that any reference in the Affidavit to statements made by third parties should also be stricken.

Evidence offered to support or deny a motion for summary judgment must be admissible at trial. *Tindle v. Pulte Home Corp.*, 607 F.3d 494, 496 (7th Cir.2010). Thus, "copies of documents cannot simply be slapped on the back of a party's statement of facts or its response with an assertion in the body that the copies are 'true and correct.' An affidavit

2

must be supplied, one that lays the necessary foundation for the documents' admission." *Maxwell v. Penn Media. (In re MarchFIRST, Inc.)*, 01-bk-24742 03-ap-1141, 2010 WL 4027723 (Bankr. N.D. Ill. Oct. 14, 2010) (Goldgar, J.).

As the Seventh Circuit has repeatedly held, "statements made by third parties in an otherwise admissible business record cannot properly be admitted for their truth unless they can be shown independently to fall within a recognized hearsay exception." *United States v. Christ*, 513 F.3d 762, 769 (7th Cir. 2008) (citing *Woods v. City of Chicago*, 234 F.3d 979, 986) (7th Cir. 2000). This is because "courts may not permit the introduction of hearsay contained within hearsay unless each layer is properly admitted under an exception" to hearsay. *United States v. Borrasi*, 639 F.3d 774, 780 (7th Cir. 2011). While the foundation witness does not need to have personal knowledge of the underlying facts, the witness does need to "have knowledge of the procedures under which the records were created." *Christ* at 770 (internal quotation omitted). Here, Adamitus does not aver in his affidavit that he is familiar with the recordkeeping practices of any third party company. Thus, he is has not laid a foundation to introduce the third party invoices as business records.

Climatemp argues, citing authority from other circuits, that documents created by third parties can qualify as the business's own business records when they are integrated into the business's records, and the business relies on those records in day-to-day operations. *See, e.g., Brawner v. Allstate Indem. Co.*, 591 F.3d 984, 987 (8th Cir.2010); *United States v. Adefehinti*, 510 F.3d 319, 326 (D.C.Cir.2007); *Air Land Forwarders, Inc. v. United States*, 172 F.3d 1338, 1342–44 (Fed.Cir.1999). A District Judge in the Northern District of Illinois has adopted this view in two opinions. *Makor Issues & Rights, Ltd. V. Tellabs, Inc.*, 735 F. Supp.2d 856, 867 n.2 (N.D. Ill. 2010); *BP Amoco Chem. Co. v. Flint Hills Res., LLC*, 697 F. Supp. 2d 1001, 1021 (N.D. Ill. 2010) (St. Eve, J., using identical language in both opinions). Whatever the merits of this position, the Seventh Circuit Court of Appeals precedent cited earlier is unequivocal. Third party invoices must be independently supported by knowledgeable persons.

Under Illinois law, a bill that has been paid is prima facie evidence of amount and the reasonableness of the payment. *Saunders v. Wilson*, 114 Ill. App. 2d 380, 382 (1st Dist. 1969). This principle has its clearest application in cases involving medical bills. *Barreto v. City of Waukegan*, 133 Ill. App. 3d 119, 130 (2d Dist. 1985). However, that rule is squarely

rejected in federal practice even in the medical context. *Collins v. Kobort*, 143 F.3d 331, 337-38 (7th Cir. 1998). There is no exception to hearsay allowing admission of a paid bill. Rather, Rule 803(6), F.R. Evid., applies and requires a foundation to be laid by a witness with knowledge of the recordkeeping procedure. *Id.*

However, a statement is only hearsay when it is offered "to prove the truth of the matter asserted in that statement." F.R. Evid. 801(c)(2). A statement is not hearsay where offered to show its effect on the witness. *U.S. v. Inglese*, 282 F.3d 528, 538 (7th Cir. 2002). "The hearsay rule thus is not violated where invoices are admitted not for their truth but simply for the fact that they state particular amounts and thereby substantiate an individual's testimony as to how much was paid for a specific service or item." *Harris v. Jamaica Auto Repair Inc.*, 03-cv-417, 2009 WL 2242355 at *1 (E.D.N.Y. July 27, 2009) (internal quotation omitted).

Here, the invoices attached to exhibits in Adamitus's affidavit are used for their effect on the witness: that Adamitus charged the amount on each invoice against 3RC's contract. They may not, however, be used to show the truth of statements in the invoices: that some particular subcontractor submitting an invoice had done such and such work, reasonably worth such and such amount of money. For example, the Adamitus Affidavit provides, "As reflected in Change Order #1, Climatemp deducted $51,148.96 from the 3RC contract amount for work performed and materials provided by TVS (paid by FHP as a supplement to 3RC's work as they were falling behind schedule) and for Bulletin No. 1 to the 3RC Proposal." ¶44. Thus, the invoices included in the exhibits to the Affidavit of Fred Adamitus may be offered only to show why Climatemp did something, not to show the truth of facts on the invoices or the reasonableness of the invoice prices.

Nor are references to the alleged hearsay to be stricken. Not only are the third party records used for a non-hearsay purpose, but Fred Adamitus alleges sufficient personal knowledge of the change orders issued to 3RC. The Affidavit provides, "I am the Project Manager for Climatemp for the Kelly Curie Project and responsible for Climatemp's day to day operations on the Project, its interactions with FHP, as well as monitoring the work of Climatemp's subcontractors on the Project including 3RC" ¶6. The affidavit further provides, "At the time of 3RC's Default, I performed a review of the outstanding work left by 3RC. Among other things, these tasks, which were supposed to be performed by 3RC, were not performed by 3RC." A lengthy list follows. ¶38 Further, "After 3RC walked off the

4

Project . . . Climatemp retained the services of various other contractors." ¶39 Adamitus, as the project manager, would have been responsible for overseeing these subcontractors. Thus, the scope of the work performed, and the what work by others should be charged against 3RC's contract were within Adamitus's personal knowledge. Therefore, there is no basis for excluding statements in the Adamitus Affidavit about what change orders were issued.

Accordingly, the Trustee's Motion to Strike will denied by separate order. However, the contents and accuracy of remedial tasks performed that resulted in change orders, and the value of such said tasks is not established by the change orders. It remains to be determined whether the Adamitus Affidavit established the details pertaining thereto.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Dated this 26th day of November, 2013