UNITED STATE BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>3RC Mechanical & Contracting<br>Services, LLC,<br><br>                              Debtor | |
| N. Neville Reid, as Chapter 7 Trustee<br>for 3RC Mechanical & Contracting<br>Services, LLC,<br><br>                              Plaintiff<br><br>v.<br><br>Climatemp, Inc.<br><br>                              Defendant | Bankruptcy No. 10-bk-34781<br><br>Chapter 7<br><br>Adversary No. 10-ap-2680 |

## MEMORANDUM OPINION DENYING CLIMATEMP'S MOTION FOR SUMMARY JUDGMENT (DKT 69)

3RC Mechanical & Contracting Services ("3RC") filed a petition for relief under chapter 7 of the Bankruptcy Code. N. Neville Reid, the Chapter 7 Trustee ("Trustee"), filed this adversary proceeding against Climatemp, Inc. ("Climatemp") seeking damages for breach of contract and unjust enrichment for work allegedly performed by 3RC under two construction subcontracts. Climatemp filed an answer and affirmative defenses.

Climatemp moved for summary judgment (Docket 69.) asserting that undisputed facts show that Trustee is not entitled to any payment because 3RC failed to satisfy all conditions precedent to payment, that certain sums of money are not owed to 3RC under theories of recoupment, and that a final 10% retainage payment is not due because performance was not complete. As explained below, summary judgment will be denied because affidavits submitted by Trustee are enough to demontrate a genuine issue of material fact on all three theories.

The motion for summary judgment also begat ancillary motions to strike parts of motions and exhibits. They will likewise be denied, for reasons explained below.

### Undisputed Facts

1. On or about September 2008, 3RC and Climatemp entered into a contract (the "Belmont Cragin Contract") whereby 3RC as sub-subcontractor would provide services to

Climatemp as subcontractor related to construction of the Belmont Cragin Area Elementary School. (Docket 64 ¶ 12.)

2. 3RC competed its work under the Belmont Cragin Contract. (Docket 100 ¶ 7.)

3. Climatemp has paid to 3RC $915,038.52 on the Belmont Cragin Contract to date.

4. Trustee alleges that the final contract price due to 3RC on the Belmont Cragin Contract was $919,184 after adjustments, (Docket 100 ¶ 8.) leaving a balance of $4,152.48 due to 3RC on that contract. (Docket 64 ¶13.)

5. Climatemp contends that the final contract price on the Belmont Cragin Contract was $916,872.00 after adjustments, leaving a balance due of $1833.48 on that contract.

6. On or about October 2008, 3RC and Climatemp entered into a contract (the "Kelly Curie Contract") whereby 3RC as sub-subcontractor would provide services to Climatemp as subcontractor related to Kelly Curie High School. (Docket 64 ¶ 14.)

7. For the Kelly Curie Project, Climatemp had a subcontract with F.H. Paschen, S.N Nielsen & Assoc, LLC ("FHP".)

8. 3RC provided services under the Kelly Curie Contract from October 2008 until June 2010. Trustee now alleges that Climatemp owes $786,192.04 on the Kelly Curie Contract. (Docket 64 ¶15.)

9. On March 1 and 2, 2010, 3RC did not provide any personnel for the Kelly Curie Project, and Climatemp was put on notice about 3RC's failure. 3RC personnel returned to work on March 3. (Docket 100 ¶ 12, 15.)

10. On March 15, 2010, Climatemp was informed by FHP that one of 3RC's own subcontractors on the Kelly Curie Project, Central Contractors, had sent out Notice of an Intent to Lien due to non-payment from 3RC regarding work performed by Central Contractors on the Project. (Docket 100 ¶ 18.) Climatemp paid Central Contractors directly to satisfy the lien claim, and deducted that payment from the next payment made to 3RC. (Docket 100 ¶ 19.)

11. On March 25, Climatemp met on-site with representatives of the Public Building Commission, FHP and 3RC concerning a recovery schedule for the Kelly Curie Project to bring construction progress up to schedule. At that time, 3RC presented a recovery schedule, which at the time appeared to be appropriate.

12. On May 20, 3RC's employees walked off the Kelly Curie Project claiming that 3RC's paychecks to them had bounced. (Docket 100 ¶ 28.)

13. On June 22, 3RC personnel all left the Kelly Curie Project and 3RC gave notice to Climatemp that it was going out of business. (Docket 100 ¶ 38.)

14. Climatemp alleges that when 3RC walked of the job, substantial portions of 3RC's scope of work under the Kelly Curie Contract was incomplete. Trustee responds that 95% to 99% of 3RC's scope of work was completed before 3RC walked off the job. (Docket 100 ¶ 39.)

15. Climatemp issued a Notice of Default to 3RC on June 23, 2010. (Docket 100 ¶ 40.)

16. 3RC's bankruptcy filing followed, on August 3, 2010.

17. After 3RC walked off the Kelly Curie Project, Climatemp retained the services of various other contractors, including an entity called Quality Control Systems to complete 3RC's scope of work and to correct asserted errors in 3RC's work. (Docket 100 ¶ 42.)

18. Climatemp asserts that it spent at least $700,000 to complete 3RC's contracted scope of work (Docket 70 ¶¶ 47-67.)

19. Climatemp also asserts that it is entitled to keep $111,828 for retainage under the Kelly Curie Contract. (Docket 70 ¶ 69.)

Further details appear in the discussion below.

## Procedural History

Together with its motion for summary judgment, Climatemp filed its Statement of Undisputed Facts, as required by Local Bankruptcy Rule 7056-1. (Docket 70.)

In response to the summary judgment motion, 3RC filed its Response to Climatemp's Statement of Undisputed Facts ("Trustee's Response") (Docket 100.) as well as a Motion to Strike Exhibits and Portions of Affidavit ("Trustee's First Motion to Strike"), arguing that invoices attached to Fred Adamitus's affidavit (the "Adamitus affidavit") were hearsay. (Docket 101.) Trustee's First Motion to Strike was denied because a statement is not hearsay where offered to show its effect on the witness. *Reid v. Climatemp, Inc. (In re 3RC Mechanical & Contracting Services, LLC)*, 502 B.R. 548, 552 (Bankr. N.D. Ill. 2013).

As a result of affidavits by Frank Cassano (the "Cassano affidavit") and Abe Correa (the "Correa affidavit") attached to Trustee's Response, Climatemp sought leave to take depositions of Cassano and Correa prior to further briefing on summary judgment; that was granted. (Docket 114.) Together with its Reply brief, (Docket 137.) Climatemp filed a Response to 3RC's Response, and its own Motion to Strike ("Climatemp's Motion to Strike"), attaching the depositions of Cassano (the "Cassano deposition") and Correa (the Correa deposition").

3

Trustee then filed yet another Motion to Strike ("Trustee's Second Motion to Strike"), seeking to exclude the use of the depositions of Cassano and Correa.

Separately, Trustee orally moved to dismiss Count II of the adversary complaint, which sought damages for unjust enrichment. By agreement, Count II has since been dismissed.

## DISCUSSION

### Jurisdiction

Jurisdiction lies over this Motion under 28 U.S.C. § 1334. The case and pleadings related to it are referred here by Internal Procedure 15(a) of the District Court for the Northern District of Illinois. This matter is a trustee's adversary complaint seeking damages for breach of contract under state law, and is therefore not a core proceeding, but is related to the bankruptcy case under title 11. "A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11." 28 U.S.C. § 157(c)(1). § 157(c)(1) further provides that the "any final order or judgment shall be entered by the district judge," implying that interim orders may be entered by a bankruptcy judge under authority to "hear" the proceeding. However, both parties have consented to entry of final judgment by a bankruptcy judge under 28 U.S.C. § 157(c)(2), Docket 51 & Docket 54.

### Summary Judgment Standard

Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." F.R.C.P. 56(a) (made applicable in bankruptcy by Fed. R. Bankr. P. 7056). "The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact." *Roger v. Yellow Freight Sys., Inc.*, 21 F.3d 146, 148 (7th Cir.1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). If the initial burden is met, the non-moving party that bears the burden of proof on a dispositive issue at trial must affirmatively demonstrate a genuine issue for trial on that issue. *See id.* "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts [are not to be made by] a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255

(1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.*

Under Rule 56(a), F.R.C.P., and Rule 7056(a), Fed. R. Bankr.P., a party may move for summary judgment on separate issues thereby seeking to resolve those issues before trial. Partial summary judgment as to particular issues is permitted if the movant shows there is no genuine issue of material fact on that part or all of a claim or defense. F.R.C.P. 56(a).

## Motions to Strike

There is no rule which allows a motion to strike affidavits or exhibits to affidavits of a summary judgment procedure. Motions to Strike are disfavored in the Seventh Circuit. *See Custom Vehicles, Inc. v. Forest River, Inc.*, 464 F.3d 725 (7th Cir. 2006) (Easterbrook, J., in chambers). In *Custom Vehicles*, Judge Easterbrook, serving as the motions judge, denied a motion to strike portions of an appellate brief and, as a sanction, deducted twice the length of the motion to strike "from the permissible length of the offending party's reply brief." *Id.* at 726. Even though motions to strike might sometimes be proper, "there is no provision for a judicial blue pencil." *Id.* at 727.

The reasoning in *Custom Vehicles* has also been applied in the summary judgment context. "Instead of narrowing the issues and allowing for a more expeditious resolution of the motion for summary judgment, motions to strike generate another round of briefs that the court is required to read before it can reach the merits of the underlying dispute." *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. Graphic Packaging Int'l, Inc.*, 06-C-1188, 2007 WL 2288069 at *3 (E.D. Wis. Aug. 4, 2007) (citing *Custom Vehicles*). Rather, "[t]he proper way to contest the opposing party's statement of facts, the Court noted, is a brief in response or reply, not a motion to strike." *Id.* at *3. "Motions to strike disserve the interest of judicial economy. The aggravation comes at an unacceptable cost in judicial time." *Redwood v. Dobson*, 476 F.3d 462, 471 (7th Cir. 2007). "No sane judicial system would fritter away resources in that fashion." *Custom Vehicles,* at 727.

Instead of motions to strike, Rule 56, (F.R.C.P. as made applicable in bankruptcy by Rule 7056 F.R. Bankr. P.) provides that "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." F.R.C.P. 56(c)(2).

5

Here, we have seen just such a demonstration of such aggravation and frittering away of resources. Instead of ignoring the motions to strike, however, they will be considered on their merits as arguments to disregard material objected to as non-evidentiary. In a summary judgment procedure, in order for documents and factual material to be used to support or oppose the motion, they must be shown to be admissible as evidence. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009).

## New Material on Reply

Trustee argues that Climatemp may not supplement the record in its reply brief because when an issue is raised for the first time on reply, the nonmoving party has no opportunity to respond to that issue, "and the record that issue therefore is developed insufficiently for consideration," citing *Aircraft Gear Corp. v. Marsh*, 02 C 50338 2004 WL 2222262, 2004 U.S. Dist. LEXIS 19859 at *2 (Sept. 30, 2004). However, the *Aircraft Gear* does not support Trustee's argument to disregard the new material on Climatemp's reply. In *Aircraft Gear*, the court on cross-motions for summary judgment faced "a flurry of motions" but did not refuse to consider the new argument on reply. Rather, the court denied both motions for summary judgment without prejudice and ordered briefing to begin anew, ruling "[t]he best way out of this tangle of pleadings appears to be simply to cut the knot and begin again." *Id.*

At most, Trustee's argument that it would be unfair to introduce new facts and argument on reply should result in Trustee having his opportunity to respond. Here, however, Trustee has had ample opportunity to respond to the assertedly new facts and arguments in Climatemp's reply brief. Trustee's Second Motion to Strike is not limited to an attack on the procedural unfairness of allowing allegedly new facts and arguments, but responds to the material on the merits. Further, Trustee has had the opportunity to respond to the same facts and arguments in its Response to Climatemp's Motion to Strike (Docket 146.) Therefore, allowing Climatemp to introduce new facts and arguments on reply has not been procedurally unfair to Trustee, and the assertedly new material shall not be disregarded.

## The Sham Affidavit Doctrine

"Admissibility is the threshold question because a court may consider only admissible evidence in assessing a motion for summary judgment." *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). An affidavit is not to be excluded from consideration merely because it is allegedly false, nor because it is inconsistent with deposition testimony. A

6

Seventh Circuit opinion once held that when an affidavit is contradicted on in a subsequent deposition, the affidavits cannot defeat a motion for summary judgment. *Darnell v. Target Stores*, 16 F.3d 174, 176-77 (7th Cir. 1994). *Darnell* had reasoned that, "Inherently depositions carry an increased level of reliability. Depositions are adversarial in nature and provide the opportunity for direct and cross-examination." *Id.* at 176. However, that opinion was subsequently overturned on a significant point by *Hill v. Tangherlini*, 724 F.3d 965, 967 n.1 (7th Cir. 2013). The *Hill opinion* overturned *Darnell* to the extent that *Darnell* held that "a plaintiff may not rely on 'self-serving' evidence to create a material factual dispute." *Id.* An increased or decreased level or reliability is a determination of credibility, and as *Anderson v. Liberty Lobby* teaches, credibility determinations are not proper on summary judgment. 477 U.S. at 255.

Since it would be impermissible in a summary judgment procedure for the judge to make the determination merely on credibility, there must be something more to justify disregarding an affidavit. *Darnell* had reasoned that "[s]elf-serving affidavits without factual support in the record will not defeat a motion for summary judgment." 16 F.3d at 177 (citing *Slowiak v. Land O'Lakes, Inc.*, 987 F.2d 1293, 1295 (7th Cir. 1993)). That is, self-serving affidavits, without more, were not to be considered part of the factual record *at all.* That is the reasoning repudiated in *Hill v. Tangherlini.* So the affidavits filed in this case by the non-moving plaintiff in proper form must be considered here although their factual assertions may be challenged.

Climatemp also argues that, regardless of timing, where a deposition and an affidavit are in conflict, the affidavit must be disregarded, citing *Russell v. Acme-Evans Co.* 51 F.3d 64, 67-68 (7th Cir. 1995). However, *Russell* involved an affidavit executed after an unfavorable deposition by the same witness. This is known as the sham affidavit doctrine. Under the *Russell* opinion, the order of affidavit and the deposition from the same witness matters: "We have been highly critical of efforts to patch up a party's deposition with his own subsequent affidavit." *Id.* at 67 "The Seventh Circuit has ruled that 'the *Russell* analogy is imperfect' when the "affidavit was actually executed *prior to* his contradictory deposition testimony." *Harris v. Owens-Corning Fiberglas Corp.* 102 F.3d 1429, 1432 (7th Cir. 1996) (emphasis in the original). Indeed, the timing of the contradictory statement matters at least as much as the inherently greater reliability of live deposition testimony over sworn statements in writing prepared by attorneys. Judge Cudahy, in his concurrence to *Allied Signal*, explained why timing matters for the sham affidavit:

7

> When a party seeks to create an issue of fact by simply submitting an affidavit which directly contradicts a witness' earlier sworn comments, a court rightly ignores the later submission since it creates no *genuine* factual dispute. To view such a submission as creating a genuine issue of material fact might severely diminish the availability of summary judgment as a useful procedure.
>
> It is easy to determine that an affidavit produced in response to a summary judgment motion in contradiction of a prior statement is a "sham" because such an affidavit is not difficult to produce and because it pops up in the immediate context of summary judgment.

*Bank of Illinois v. Allied Signal Safety Restraint Systems*, 75 F.3d 1162, 1173 (7th Cir. 1996) (Cudahy, J., concurring) (footnote omitted, emphasis in the original).

Both Cassano and Correa affirmed in their affidavits that they would be able to testify to the matters contained therein from personal knowledge. (Cassano affidavit at ¶ 1; Correa affidavit at ¶ 1.) In their subsequent depositions, they gave answers that varied from the definite statements made in the affidavits: sometimes varying in detail or emphasis, sometimes in important substance. Those variations will raise questions at trial as to credibility of those witnesses if they testify to the same matters as in the affidavits. However, conflict between the affidavits and the depositions—including testimony about whether the witness would be able to testify from personal knowledge—creates questions of credibility, not admissibility. Assessment of credibility is improper in a summary judgment procedure. Therefore, the Cassano affidavit and the Correa affidavit are not to be disregarded, but their deposition testimony that followed showed issues to be decided at trial.

### The Kelly Curie Project

#### Climatemp's First Theory: No Breach by Climatemp

Climatemp argues that it was not in breach of its contract with 3RC because 3RC materially breached the contract by walking off the job of the Kelly Curie Project in June, 2010. "To state a cause of action for breach of contract a plaintiff must show (1) the existence of a valid and enforceable contract; (2) the performance of the contract by plaintiff; (3) the breach of the contract by defendant; and (4) a resulting injury to plaintiff." *Hickox v. Bell*, 195 Ill. App. 3d 976, 992 (1990). A material breach of a contract provision by one party to a contract justifies nonperformance by the other party. *William Blair & Co., LLC v. FI Liquidation Corp.*, 358 Ill. App. 3d (1st Dist. 2005).

> Moreover, the determination of "materiality" is a complicated question of fact, involving an inquiry into such matters as whether the breach worked to

8

> defeat the bargained-for objective of the parties or caused disproportionate prejudice to the non-breaching party, whether custom and usage considers such a breach to be material, and whether the allowance of reciprocal non-performance by the non-breaching party will result in his accrual of an unreasonable or unfair advantage.

*Sahadi v. Cont'l Illinois Nat. Bank & Trust Co. of Chicago*, 706 F.2d 193, 196 (7th Cir. 1983) (citing Illinois law on materiality of breach). All of these issues must be resolved with reference to the intent of the parties as evidenced in large part by the full circumstances of the transaction, thus making these issues especially unsuited to resolution by summary judgment. *Id.* at 196-97.

Here, the parties have starkly divergent versions of the material facts. Climatemp contends that substantial portions of 3RC's scope of work under the Kelly Curie Contract were incomplete. (Climatemp Statement ¶ 39.) Trustee contends that 3RC had completed between 95% and 99% of its scope of work. (Trustee's Response to Climatemp Statement ¶ 39.) Further, Trustee argues that Climatemp was itself in material breach by failing to pay 3RC in a timely manner. (Trustee Statement ¶¶ 29, 32.)

In its reply and motion to strike, Climatemp argues that the Correa's and Cassano's affidavits should be disregarded because their depositions establish that the statements made in the affidavits were not made on personal knowledge, were based on hearsay, or were mistaken. However, because the affidavits were executed before the depositions, they are not controlled by the "sham affidavit" precedent, and may be considered as possible admissible evidence. Federal Rule of Evidence 602 provides that "[e]vidence to prove personal knowledge may consist of the witness's own testimony." To the extent that they later contradicted their earlier statements that the affidavits were made on personal knowledge, or contradicted some substance of their affidavits, that goes to credibility, not admissibility. On summary judgment, all inferences are to be drawn in favor of the non-moving party. Therefore, the Cassano and Correa affidavits filed by the non-movant are enough to create a dispute as to a material facts as to whether 3RC was in material breach when it walked off the job on June 22, 2010. Therefore, summary judgment on the contention of breach would not be proper.

<u>Climatemp's Second Theory: Recoupment</u>

Next, Climatemp argues that it is entitled to partial summary judgment under the theory of recoupment. "Recoupment is an equitable remedy which allows a defendant to reduce the amount of a plaintiff's claim by asserting that there are funds due to it from the

9

plaintiff which arose out of the same transaction." *A and C Electic Co. v. Meade Electric Co.*, 211 B.R. 268, 273 (Bankr. N.D. Ill. 1997) *citing, In re Klingberg Schools*, 68 B.R. 173, 178 (N.D.Ill. 1986), *aff'd*, 837 F.2d 763 (7th Cir. 1988); *In re Clowards, Inc.*, 42 Bankr. 627, 628 (Bankr. D. Idaho 1984). "It is a nonbankruptcy common law doctrine established through precedent which is not codified in the Bankruptcy Code." *A and C, Id. citing,* In re *Flagstaff Realty Associates*, 60 F.3d 1031 (3rd Cir. 1995).

Here, it does not appear that recoupment is the right legal label for Climatemp's claim. Rather, Climatemp seems to use the term recoupment as "the ancestor of the compulsory counterclaim." *Coplay Cement Co., Inc. v. Willis & Paul Grp.*, 983 F.2d 1435, 1440 (7th Cir. 1993). The Seventh Circuit has held that, "[s]etoff survives as a distinctive doctrine—something different from a permissive counterclaim, on the one hand, or a name for the netting of opposing claims, on the other hand—only in banking and in bankruptcy." *Id.* at 1441. The same may be said of recoupment. Recoupment is to be distinguished from set-off because "set-offs are governed and limited by 11 U.S.C. § 553, there is no comparable provision limiting assertion of recoupment rights." *In re A & C Elec. Co., Inc.*, 211 B.R. at 273 (citing *In re Clowards*, 42 B.R. at 627) "The justification for the recoupment doctrine is that where the creditor's claim against the debtor arises from the same transaction as the debtor's claim, it is essentially a defense to the debtor's claim against the creditor rather than a mutual obligation, and application of the limitations on set-off in bankruptcy would be inequitable." *A & C*, 211 B.R. at 273.

Climatemp argues that it is entitled to "recoupment" here because it expended money to complete or correct the work that 3RC failed to perform, and to pay 3RC's subcontractors. Trustee argues that in fact, Climatemp was in breach by failing to pay 3RC timely even though 3RC had substantially performed on its subcontract, (*See* Cassano Aff. ¶ 33.) having completed 95% of the work contemplated under the Kelly Curie Contract. (*Id.* ¶ 39.) Thus, as Trustee argues, Climatemp's failure to pay 3RC timely resulted in a material breach that would entitle it to cease work and recover the value of the work already performed. *Brady Brick & Supply Co. v. Lotito*, 43 Ill. App. 3d 69, 73 (2d Dist. 1976). In its Reply, (Docket 137.) This amounts to a counterclaim for breach of contract, and there is no need to determine whether recoupment or setoff is the appropriate remedy. Climatemp argues that it paid 3RC timely because even though there was no provision in the written subcontract, 3RC agreed that Climatemp would pay 3RC when Climatemp itself was paid, pursuant to a provision of the contract between Climatemp and its general

10

contractor, and to which Cassano testified to extensively. (Cassano Deposition pp. 58-69.) Further, Climatemp argues that 3RC did not substantially complete its work.

However, there was no provision in the written subcontract between Climatemp and 3RC providing for when progress payments from Climatemp were to be due. Climatemp argues that the provision referred to was part of its subcontract with 3RC because it was incorporated into the 3RC subcontract along with the rest of Climatemp's contract with Paschen. In the his affidavit, Cassano stated that "no one from Climatemp advised me in writing or otherwise that the payment terms contained in any subcontract between Climatemp and Paschen for the Kelly Curie Project were included in the Kelly Curie subcontract." (Cassano Affidavit ¶ 19.) Whether the parties were under a "pay-when-paid" provision of their subcontract is a genuine question of material fact. If it is resolved at trial in favor of Trustee, then Climatemp may be found to have materially breached its subcontract with 3RC, and thus would not be entitled to damages on its counterclaim. But at this point, summary judgment is not proper under Climatemp's "recoupment" theory.

### Climatemp's Third Theory: Retainage

Finally, Climatemp argues that it is entitled to partial summary judgment on 10% of the contract price of the Kelly Curie Contract under the theory of retainage. A retainage is a portion of payments withheld until full completion of the work. 3 Bruner and O'Connor on Construction Law § 8.18 In effect, payment of the retainage amount depends on satisfying the condition precedent of completing all work (and the other conditions). "The rule is well established, that where one has the precedent condition in his favor, that he is not liable on an action until the other has performed . . . A condition precedent is one which must be performed before a contract becomes effective or which is to be performed by one party to an existing contract before the other party is obligated to perform." *John J. Calnan Co. v. Talsma Builders, Inc.*, 77 Ill. App. 3d 221, 225 (1st Dist. 1979).

There is no provision in the written subcontract between Climatemp and 3RC providing for a retainage in favor of Climatemp. In the Cassano's affidavit, he stated that "no one from Climatemp advised me in writing or otherwise that the payment terms contained in any subcontract between Climatemp and Paschen for the Kelly Curie Project were included in the Kelly Curie subcontract." (Cassano Affidavit ¶ 19.) Thus, the existence of a purported retainage provision of the subcontract is a genuine question of material fact. If it is resolved in favor of Trustee, Climatemp may not be entitled to any retainage. Thus, summary judgment is not proper for Climatemp's retainage theory.

<u>Unjust Enrichment</u>

Climatemp also claims that it is entitled to partial summary judgment on Trustee's Count for unjust enrichment because unjust enrichment is only available when there is an express contract. This point is moot because Count II of Trustee's adversary complaint alleging unjust enrichment was dismissed by agreement.

### The Belmont Cragin Project

Trustee alleges that Climatemp owes the estate $4,145.48 on the Belmont Cragin Contract. Climatemp argues that it is entitled to $2,312 of that amount in recoupment. According to the Cassano affidavit, Cassano can testify that 3RC was owed a total of $919,184.00 on the subcontract after adjustments, of which $915,038.52 was paid, leaving a balance of $4,145.48. (Cassano Aff. ¶¶ 9-10.) According to the Adamitus Affidavit, the final subcontract amount was $916,872.00 after adjustments, leaving a balance of $1833.48. The difference is a dispute of material fact, and not suitable for summary judgment.

### Civility

In its Reply on Summary Judgment, (Docket 137.) Climatemp's counsel resorts to calling Trustee's arguments "ridiculous" and his claims "frivolous." In its Reply on its Motion to Strike, Climatemp's counsel calls Trustee's position and arguments "nonsensical." (Docket 158.) Neither the Seventh Circuit nor the undersigned approve of this language. As a recent Seventh Circuit opinion warned, "We take this opportunity to caution the parties and the bar that they should not lightly label their opponents' arguments as frivolous. As our sister circuit said recently:

> There are good reasons not to call an opponent's arguments "ridiculous"....
> The reasons include civility; the near-certainty that over-statement will only
> push the reader away ...; and that, even where the record supports an
> extreme modifier, the better practice is usually to lay out the facts and let the
> court reach its own conclusions.

*First Weber Group, Inc. v. Horsfall*, 738 F.3d 767, 779 (7th Cir. 2013) (citing *Bennett v. State Farm Mut. Auto. Ins. Co.*, 731 F.3d 584, 585 (6th Cir. 2013)). The cited Sixth Circuit opinion points out yet another risk for counsel. "But here the biggest reason is more simple: the argument that State Farm derides as ridiculous is instead correct." *Bennet*, 731 F.3d at 585.

## CONCLUSION

Climatemp's Motion for Summary Judgment fails because it has not demonstrated that there are no genuine issues of material facts and that it is entitled to judgment as a matter of law. For the foregoing reasons, Climatemp's Motion for Summary Judgment or, Alternatively for Partial Summary Judgment will be denied by separate order. The two pending motions to strike will likewise be denied.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Dated this 20th day of February, 2014

FEB 20 2014